IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ELI O. HERRERA,

        Plaintiff,

vs.                                                CIVIL NO.   00-369 LFG/DJS

B.J. SERVICES and LES BAUGH,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT

THIS MATTER is before the Court on Eli O. Herrera's ("Herrera") Motion to Amend Complaint [Doc. 20]. Herrera's motion is opposed.

On March 14, 2000, Herrera filed suit alleging wrongful termination and breach of contract. Herrera contends that he was falsely accused of possessing and consuming alcoholic beverages while on the job. These accusations lead to his termination. Herrera further contends that the termination was wrongful because it violated BJ Services' rules, regulations, policies and procedures, which Herrera contends allegedly formed a contract between BJ Services and himself.

Once Defendants filed their answer and issues were joined, the Court conducted a Fed. R. Civ. P. 16 scheduling conference and allowed the parties five months within which to complete discovery. In the Court's Initial Pretrial Report, discovery was to close on November 10, 2000 [Doc. 12]. Based on the case management deadlines adopted at the Rule 16 conference, the Court scheduled a pretrial conference and jury trial for March 13, 2001 and April 16, 2001, respectively.

On November 21, 2001, nearly two weeks after the close of discovery, Herrera requested that the Court extend the time within which to complete discovery until December 10, 2000. He alleged

that he had not completed discovery and that additional time was necessary to prepare his case. Neither BJ Services nor Les Baugh opposed the motion, and, accordingly, the Court entered an order reopening discovery and allowing discovery to continue through December 15, 2000 [Doc. 18].

On January 16, 2001, more than one month after the close of the extended discovery period, Herrera filed his motion to amend the complaint. He seeks to add a common law claim for termination from employment in violation of public policy. He states that he previously filed an administrative complaint with the Office of Equal Employment Opportunity Commission ("EEOC"), claiming that he was discriminated against because of his national origin, Hispanic. Herera never filed a Title VII lawsuit in court, even though he administratively exhausted his claim. He further contends that he did not pursue his proposed Title VII claim in federal court because of his understanding that he and a co-employee, who were fired at the same time, were replaced by minority employees, and that he did not learn until late October 2000 that he had been replaced by an Anglo employee. Herrera now seeks to amend his compliant to allege wrongful termination in violation of public policy. The public policy he alleges was violated is that he and another minority employee were terminated, and that his termination was based on "unlawful discriminatory reasons on the basis of race and is an unlawful violation of public policy."

Upon receipt of Herrera's motion to amend, the Court corresponded with counsel of record to determine if Herrera's proposed amended complaint, which sounded like a Title VII lawsuit, had been administratively exhausted. In response to the Court's inquiry, Herrera states that his claim is not an unlawful discrimination claim under Title VII, conceding that if his claim were characterized as a Title VII employment discrimination lawsuit, it would be time barred.

2

**Leave to Amend**

Fed. R. Civ. P. 16 governs the amendment of pleadings. As a general rule, leave to amend is freely granted in the interests of justice. However, when the court has entered a scheduling order, including deadlines for amendments, the likelihood of obtaining permission to amend drastically diminishes. Baicker-McKee, Steven, et al.,, Federal Civil Rules Handbook, 356 (2001 ed.).

Leave to amend can properly be denied when it would result in unfair prejudice to another party or significant interference with the Court's ability to manage its own docket. Further, leave can be denied when the proposed amendment would be futile. Foman v. Davis, 37 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). For example, if the proposed amendment would not survive motion practice, it can be rejected. Bauchman v. West High School, 132 F.3d 542, 561-62 (10th Cir. 1997).

Here, the proposed amendment comes well after the deadline for amending pleadings and, indeed, after the close of discovery. Allowing an amendment will require reopening discovery and motion practice, and would likely result in vacating the current pretrial conference and trial dates.

The Court would be reluctant to allow an amendment under these circumstances. Even if these concerns were overcome, The Court would still have to consider whether the proposed amended complaint could survive a motion to dismiss.

**Analysis**

As part of a national effort to eliminate unlawful discrimination in the work place, Congress established a comprehensive administrative and judicial process to deal with employment discrimination when it is based on race, creed, sex, color, national origin, age or physical handicap. In 42 U.S.C. § 2000e *et seq,* Title VII of the Civil Rights Act, Congress provided that upon receiving a complaint alleging unlawful employment discrimination, the EEOC shall conduct an investigation

3

to determine if there is cause to believe the allegations of the administrative complaint are true. 42 U.S.C. § 2000e-5(b). If reasonable cause is found, the EEOC must first seek to resolve the complaint through conference, conciliation or persuasion. 42 U.S.C. § 2000e-5(b). The complainant is permitted to bring a civil action only after the EEOC fails to resolve the complaint within a prescribed time period and issues a right-to-sue letter. 42 U.S.C. § 2000e-5(f)(1). After receiving the right-to-sue letter, the complainant has ninety days within which to bring an action. See 42 U.S.C. § 2000e-5(f)(1). The primary purpose of Title VII's administrative procedure is to achieve voluntary resolution of employment discrimination disputes. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S. Ct. 1011, 1017-18 (1974)(finding that Congress selected cooperation and voluntary compliance as the means for eliminating discrimination in the workplace); Woodman v. Runyon, 132 F.3d 1330, 1342 (10th Cir. 1997).

It is undisputed that the acts alleged in Herrera's proposed amended complaint are the very kinds of harm Congress sought to ameliorate by the adoption of Title VII, and the acts alleged would constitute unlawful discrimination in violation of Title VII. Herrera contends that his proposed complaint does not arise under Title VII, and alleges that his termination was based on "unlawful discriminatory reasons on the basis of race and in unlawful violation of public policy." (¶ 16, proposed amended complaint). This, he argues, is a separate common law tort.

Herrera acknowledges that he has recast his Title VII complaint as a common law claim for unlawful termination in violation of public policy, and candidly admits in his correspondence to the Court that a Title VII claim would be time barred. To avoid the time barment, Herrera characterizes his discrimination claim as an unlawful common law termination claim in violation of public law. Thus, what is presented is a plaintiff's "artful pleading" to avoid the jurisdictional prohibitions on a

Title VII complaint.

To file suit in federal court, it was incumbent on Herrera to administratively exhaust his claim for unlawful termination based on national origin. Our circuit previously held, in <u>Woodman v. Runyon</u>, that the two-fold purpose of the exhaustion requirement is to give notice of an alleged violation to the charged party and to give the administrative agency an opportunity to conciliate the claim in furtherance of Title VII's goals of securing voluntary compliance.

If the unlawful employment practice charged was not administratively exhausted, it is time barred. Additionally, if Herrera administratively exhausted that claim, but failed to file suit within the ninety days from receipt of the right-to-sue letter, his claim is time barred. <u>See</u> 42 U.S.C. § 2000e-5(f)(1). <u>Jackson v. Continental Cargo-Denver</u>, 183 F.3d 1186, 1187-88 (10th Cir. 1999). In either event, by now using the same allegations to recast an unlawful employment discrimination claim as a common law claim, Herrera would avoid jurisdictional restrictions imposed upon him by Congress. Under the "well-pleaded complaint" rule, the Court should simply determine if Herrera's proposed complaint states a colorable claim or cause of action. Under that test, Herrera's amended complaint should be allowed.

However, there exists an "artful pleading" exception to the well-pleaded complaint rule. Under the exception, the court should carefully analyze the proposed complaint to determine if a plaintiff has simply used artful pleading to avoid legal or jurisdictional impediments to suit. Thus, a court must look beyond the allegations to see if the case actually arises from some other source than that pled by the complaint's drafter.

The U.S. Supreme Court in <u>Franchise Tax Bd. California v. Construction Laborers Vacation Trust</u>, 463 U.S. 1, 13, 103 S. Ct. 2841, 2848 (1983), noted that a case may still "arise under" the

laws of the United States if the right to relief under state law requires resolution of a substantive question of federal law. In such an instance, a court is required to look beyond the allegations of the complaint to determine whether a plaintiff's complaint actually arises from a claimed violation of federal law. Fristoe v. Reynolds Metals Co., 615 F.2d 1209 (9th Cir. 1980). A pleader cannot by artful pleading disguise a federal claim to simply look like a state claim. Greenfield v. National Westminster Bank USA, 846 F. Supp. 302, 305 (S.D.N.Y. 1994). Indeed, the Tenth Circuit stated:

> Plaintiffs have often attempted to avoid federal jurisdiction under Section 301 [of the National Labor Relations Act] by framing their complaint in terms of such diverse state law theories as wrongful discharge, intentional infliction of emotional distress, conspiracy, and misrepresentation. See, e.g., Oglesby v. RCA Corp., 752 F.2d 272, 276-78 (7th Cir. 1985); Olguin v. Inspiration Consol. Copper Co., 740 F.2d 1468 (9th Cir. 1984); Fristoe v. Reynolds Metals Co., 615 F.2d 1209 (9th Cir. 1980). Under the "artful pleading" doctrine, federal courts look beyond the allegations of the complaint, often to the petition for removal, to determine whether the wrong complained of actually arises . . . from [violation of federal law]. See Williams v. Caterpillar Tractor Co., 786 F.2d 928, 931 & n.1 (9th Cir.), *aff'd* 107 S. Ct. 2425 (1987); Ogelsby, 752 F.2d at 278; Fristoe, 615 F.2d at 1212.

Local Ass'n of Journeymen & Apprentices of Plumbing & Pipe Fitting Indus. v. Bechtel Power Corp., 834 F.2d 884 (10th Cir. 1987).

The Court concludes that to allow Herrera's artful pleading of a common law termination claim, when the basis of the termination is unlawful discrimination based to avoid the restrictions of Title VII, would result in circumvention of Congress's "careful and thorough remedial scheme." Navajo Tribe of Indians v. State of New Mexico, 809 F.2d 1455, 1468 (10th Cir. 1987).

President Abraham Lincoln is attributed with posing the question "if you call a tail a leg, how many legs does a dog have?" The answer, according to Lincoln, is still four, because "calling a tail

a leg does not make it one." A tail is still a tail, and a leg is still a leg. So, too, here. Calling the proposed amendment a common law claim for unlawful termination in violation of public policy doesn't turn an unlawful employment practice in violation of Title VII into something else.

Thus, the Court concludes that allowing the amendment would be futile, and therefore, the Court denies Herrera's motion to amend.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

ATTORNEY FOR PLAINTIFF:
Matthew L. Chacon, Esq.

ATTORNEY FOR DEFENDANTS:
Steven L. Bell, Esq.