IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ELI O. HERRERA,

                Plaintiff,

     vs.                                        No. CIV 00-369 LFG/DJS

B.J. SERVICES and
LES BAUGH,

                Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment [Doc. 29]. In accord with local rules, the motion, response, and reply were filed as a package. Oral argument is not necessary; the matter may be decided on the briefs. For the reasons given below, the motion will be granted.

### Facts and Procedural History

Plaintiff Eli O. Herrera ("Herrera") brings this action against his former employer, B.J. Services ("BJS"), and his former supervisor, Les Baugh ("Baugh"), for wrongful termination. Herrera was terminated from his job with BJS on or about October 12, 1998. The following facts are taken from the parties' statement of undisputed facts, except where noted.

On October 12, 1998, Herrera was working at the BJS facility at night, along with co-worker Andy Kellywood ("Kellywood"). Kellywood's pickup truck was backed into the BJS warehouse

where Herrera and Kellywood were working, when Baugh entered the warehouse.  Baugh saw that Kellywood had beer in an open cooler in the back of his truck.

Herrera knew at the time of the incident that it was against company rules to have alcoholic beverages on the premises, and that the consequences of doing so could be termination.  Baugh asked Herrera if the beer were his, and if he had been drinking.  The facts are in dispute as to whether Herrera admitted that he had been drinking; Herrera denies this (Herrera Deposition, at 30), but Baugh says that when he asked them, both Herrera and Kellywood admitted they had been drinking (Baugh Deposition, at 16-17).  Baugh did not see any beer in Herrera's hand and did not see him consume any alcohol that night (Baugh Deposition, at 14), but because of Herrera's admission, Baugh reported to supervisors that Herrera had been drinking on the job.   Herrera and Kellywood were terminated on the basis of the information provided by Baugh.

Herrera's suit against BJS and Baugh is based on diversity and alleges four causes of action under state law:  breach of an implied contract of employment; unlawful termination in violation of public policy; misrepresentation by Les Baugh; and vicarious liability of BJS based on Baugh's misrepresentations.  Herrera made no claim in his original complaint that his termination was based on racial or national origin discrimination; however, he attempted to amend his complaint to clarify that Count II, violation of public policy, was based on racial discrimination, since he is Hispanic and was replaced by an Anglo employee (Motion to Amend Complaint, Doc. 20).  The Court denied this motion on grounds that the attempted amendment actually stated a claim under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and Herrera had not exhausted his administrative remedies for

such a claim.  (Order Denying Plaintiff's Motion to Amend Complaint, Doc. 26).[1]

Defendants now move for summary judgment, arguing, as to the respective counts: (1) no implied contract of employment exists; therefore, Herrera was an at-will employee who could be terminated at any time, for any reason or no reason; (2) Herrera does not have a claim for termination in violation of public policy, in that there was no retaliatory discharge in this case; (3) the count alleging misrepresentation against Baugh does not state a claim and therefore, (4) no claim for misrepresentation can be brought vicariously against BJS.  Defendants' arguments are well taken.

## Discussion

### A.  Standards for Summary Judgment

Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995).  The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986).

---

[1]Also in the motion to amend, Herrera stated that he wished "to delete Les Baugh as a Defendant for jurisdictional reasons."  [Doc. 21, at 1].  Presumably, the presence of Baugh as a defendant would defeat diversity jurisdiction.  Defendants do not oppose Plaintiff's "voluntary withdrawal of [the] allegations against Les Baugh individually" [Doc. 22, at 1].  This request was not addressed in the Court's earlier order; however, due to the disposition of this motion, there is no need to address Baugh's presence in the lawsuit at this time.

Once the moving party meets its burden, the party opposing the motion must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510 (1986); Biester v. Midwest Health Servs, Inc., 77 F.3d 1264, 1266 (10th Cir. 1996). The party opposing the motion may not rest upon the mere denials of his pleadings to avoid summary judgment. Fed. R. Civ. P. 56(e); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

"The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine.'" Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997). Summary judgment is appropriate only if there not sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. Anderson, 477 U.S. at 249, 106 S. Ct. at 2511. Thus, the court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., at 251-52, 106 S. Ct. at 2512. The court in considering a motion for summary judgment construes the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. Perry v. Woodward, 199 F.3d 1126, 1131 (10th Cir. 1999), *cert. denied,* 120 S. Ct. 1964 (2000).

B.  Implied Contract

In New Mexico, an employment relationship is presumed to be terminable at the will of either party. Hartbarger v. Frank Paxton Co., 115 N.M. 665, 668, 857 P.2d 776, 779 (1993). However, the presumption is rebuttable by an implied contract term that restricts the employer's power to discharge. Id., 115 N.M. at 668; Kiedrowski v. Citizens Bank, 119 N.M. 572, 575, 893 P.2d 468, 471 (Ct. App. 1995).

4

> An at-will employment relationship can be terminated by either party
> at any time for any reason or no reason, without liability ...  New
> Mexico courts have recognized two additional exceptions to the
> general rule of at-will employment: wrongful discharge in violation of
> public policy (retaliatory discharge), and an implied contract term that
> restricts the employer's power to discharge.

Hartbarger, 115 N.M. at 668.   In connection with his claim in Count I, Herrera asserts that an

implied contract of employment existed between himself and BJS based on language in the BJS

employee handbook, and on words and conduct of BJS, which created an implied promise not to

discharge him except for good cause.

      1.  Employee Handbook.

      Language in an employee handbook can modify the at-will employment relationship if it sets

up established procedures for termination, Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M.

728, 732, 918 P.2d 7, 11 (1996), or is otherwise sufficiently explicit to create an expectation of

continued employment or to restrict the employer's power to discharge.  Hartbarger, 115 N.M. at

669.  However, a handbook does not create an implied contract if its language is non-promissory in

nature and lacks specific contractual terms which might evidence intent to form such a contract.

Sanchez v. The New Mexican, 106 N.M. 76, 78, 738 P.2d 1321, 1324 (1987).

      In addition, an explicit disclaimer in an employee handbook stating that employees can be

discharged at any time and for any reason will ordinarily be upheld, unless the employer engaged in

some form of oral representations or other conduct which reasonably would lead employees to

believe they would not be terminated without just cause or a fair procedure.  Kiedrowski, 119 N.M.

at 575.  As discussed below in subsection 2, Herrera has not met his burden of demonstrating any

words or conduct by BJS which would negate the effect of any disclaimers contained the BJS

employee handbook.  And, as Herrera acknowledges in his briefing,  "the employment handbook is

replete with language that it is **not** an employment contract."  (Plaintiff's Response, at 3; emphasis

in original).

      At page one of the Handbook (included as Ex. 1 to the Deposition of Eli O. Herrera, attached

as an exhibit to Memorandum in Support of Motion for Summary Judgment [Doc. 30]),  the

following appears in boldface capital letters immediately after the Introduction:

> NOTHING IN THIS HANDBOOK IS INTENDED TO BE A
> CONTRACTUAL OBLIGATION AND IT MAY BE
> UNILATERALLY RESCINDED, REVISED, OR ADDED TO BY
> THE COMPANY FROM TIME TO TIME.

      Immediately following the Introduction, at page two of the Handbook, is the employer's

statement that employment with BJS is at will,

> meaning that the employment relationship can be terminated by either
> the employee or the Company at any time with or without notice and
> with or without cause.  The at-will nature of an individual's
> employment with the Company may not be modified except by a
> written document signed by the President of the Company.  Any
> express or implied agreement or assurances concerning the terms,
> conditions or duration of an individual's employment with the
> Company are not binding upon the Company unless they are in writing
> and signed by the President.

      BJS's discipline policy is found at pages 16-18 of the manual.  The policy lists a number of

infractions which might lead to discipline or termination, and it concludes with an emphatic statement,

outlined in black with the bold-faced heading: "DISCLAIMER - READ THIS!  ****THIS IS NOT

A CONTRACT ****.  The disclaimer goes on to state that the disciplinary policy is a "general

guideline and does not constitute a right granted to employees" and that the policy is not a contract

of employment, and it confirms that employment with BJS is terminable at will, "meaning that the

Company may dismiss, discharge, layoff or fire any employee, and any employee may quit, at any time, with or without notice and with or without cause."

Finally, at page 37 of the handbook, the employee is given a space to sign an acknowledgment that he has received and read a copy of the manual, and that he understands that  he is employed on an at-will basis and hence may be terminated at any time, with or without notice and cause.

The Court finds that these disclaimers are sufficient to negate the existence of an implied employment contract.  They are explicit and are very clearly set forth in the handbook.  In addition, Herrera has pointed to nothing else in the handbook which would lead a reasonable employee to believe he would be terminated only for cause, and the Court finds nothing therein to support such a belief.  A mere listing of the types of conduct which can constitute grounds for discipline or dismissal, such as BJS includes in its handbook, does not imply that the enumerated conduct is the only basis for dismissal, nor does it imply a promise not to dismiss an employee for any other reason. Hartbarger, 115 N.M. at 673 ("We see no reason why the list should be deemed inclusive of all reasons for which an employee might be disciplined or terminated, or indeed, why the list should preclude discharge for no reason at all").

The Court therefore finds, as a matter of law, that the employee handbook does not constitute an implied contract of employment.

## 2. Employer's Words and Conduct

An implied contract may still exist, even in the face of a disclaimer, if the employer has made statements to the employee or otherwise engaged in conduct which reasonably leads the employee to believe he will not be terminated without just cause and a fair procedure.  Kiedrowski, 119 N.M. at 575.  The words and conduct of the parties can give rise to an implied contract of employment.

Forrester v. Parker, 93 N.M. 781, 782, 606 P.2d 191 (1980).

Herrera argues in his brief, although not in his complaint, that:

> Looking to the employee handbook in this case to determine whether
> there is an implied contract, is only one example of the words and
> conduct of the parties that took place during the many years of
> employment . . .. [D]espite the language in any employee handbook
> or employer's policies, one way or the other, it is the words and
> conduct of the parties that the Court must look at to determine
> whether or not the employee handbook or policy is a contract.  This
> is one of the ultimate issues of material fact that is appropriate for
> determination by a jury, and not by summary judgment.

Plaintiff's Response to Defendant's Motion for Summary Judgment [Doc. 33], at 3.

It is true that the Court must look to "all of the circumstances of this employment
relationship" in determining whether a contract will be implied, Hartbarger, 115 N.M. at 675, and that
the question of whether an at-will employment relationship has been modified is a "question of fact
to be discerned from the totality of the parties' statements and actions regarding the employment
relationship." Lukoski v. Sandia Indian Mgmt. Co., 106 N.M. 664, 666, 748 P.2d 507, 510 (1988)
(internal quotation marks omitted).  However, the burden is nevertheless on the Plaintiff to "sho[w]
that the employer has demonstrated an intent to restrict its power to discharge." Hartbarger, 115
N.M. at 672; see also, Lopez v. Kline, 124 N.M. 539, 541, 953 P.2d 304, 306 (Ct. App. 1997)
(plaintiff must present evidence of a promise sufficient to support an implied contract).

Herrera has not met that burden.  As noted above, once the party moving for summary
judgment makes a prima facie showing that no genuine issue of material fact exists, the party
opposing the motion come forward with specific facts, supported by admissible evidence, which
demonstrate the presence of a genuine issue for trial; he may not simply rest upon his pleadings to
avoid summary judgment.  Herrera has not presented affidavits, or any evidence whatsoever, that

8

anyone at BJS promised Herrera that he would not be fired except for just cause, nor that he was ever promised any job security or specific procedural due process in the event of termination.   O r a l statements of job security must be clear, unequivocal, and sufficiently explicit to overcome the presumption of at-will employment.  <u>Hartbarger</u>, 115 N.M. at 672; <u>Lopez</u>, 124 N.M. at 542.  In the present case, Herrera has not come up with sufficiently explicit language or conduct by anyone at BJS; indeed, there is no evidence at all of any words or conduct which would support Herrera's assertion of an implied contract.  He has, thus, failed to meet his burden on summary judgment, and the Court finds that no implied contract existed in this case.[2]  Summary judgment will be granted on Count I of Herrera's complaint.

     C.  <u>Violation of Public Policy</u>

     In Count II of the complaint, Herrera alleges that his termination was invalid, because it was done in violation of public policy.  As Herrera notes in his briefing, there are two exceptions to New Mexico's rule of at-will employment.  The first, implied contract, was discussed above.  Herrera attempts to make use of the second exception, which comes into play when an employee's termination violates public policy in that it constitutes a retaliatory discharge.  Herrera's argument

---

     [2]Even if there had been an implied contract that an employee would be terminated only for cause, the employee may still lose his lawsuit if the employer did, in fact, have just cause for terminating him.  <u>Newberry v. Allied Stores, Inc.</u>, 108 N.M. 424, 773 P.2d 1231 (1989).  It is apparent in this case that BJS had just cause for the termination.  The company fired Herrera for drinking on the job.  This is an appropriate reason for termination (<i>see</i>, BJS Employee Handbook at 16-17, 30), and Herrera was aware that he could be fired for having alcohol at work.  Although he argues there is factual dispute as to whether he was actually guilty of such misbehavior, and that the employer had a duty to conduct a thorough investigation into the facts before simply accepting the word of Baugh that he had admitted to drinking on the job, nevertheless, in an at-will employment situation such as this, an employer has no duty to investigate the factual basis for allegations against an employee.  <u>Panis v. Mission Hills Bank</u>, 60 F.3d 1486, 1490-91 (10th Cir. 1995); <u>Birge v. Apfel</u>, 141 F.3d 1184 (Table, text in Westlaw), No. 97-2158, 1998 WL 165118, at *4 (10th Cir. Apr. 2, 1998).

on this point is somewhat unclear, because he then goes on to argue that BJS violated public policy for two reasons other than retaliatory discharge; first, he claims he was discharged because of his race, and secondly, that he was terminated "for no just reason when it [the company] recruited Plaintiff and others like him after representing to all prospective employees that it would never do so." (Plaintiff's Response, at 4).

The first reason, discharge on grounds of race, is not cognizable in this action for the reasons stated in the Court's order of February 6, 2001 [Doc. 26]. In that order, the Court denied Herrera's motion to amend the complaint on grounds that Herrera failed to exhaust his administrative remedies for this claim, which can only properly be brought under Title VII.

The second reason, as Herrera acknowledges, is simply a restatement of his argument that the employee handbook creates an implied employment contract. He says: "In some ways, it [the second argument] is a variation on a theme of the implied contract argument raised above. Is or should there be a public policy that requires a corporate employer to live up to its representations to prospective employees?" (Plaintiff's Response, at 4). He asserts that BJS published in the handbook that employees will be disciplined only for misconduct, violation of company policy, poor performance, or engaging in unsafe behavior. This assertion is belied by the record. The handbook clearly states in the Discipline policy (at p. 16), that, "It would be impossible to list all conduct that may result in disciplinary action; therefore, the following list is by way of example only and is not exhaustive." In any case, the New Mexico court have held that a handbook's listing of reasons for discipline or termination does not, without more, imply a promise not to dismiss an employee for any other reason. Hartbarger, 115 N.M. at 673.

Finally, although Herrera mentions the "retaliatory discharge" grounds, there is nothing on

the record of this case to indicate that Herrera was engaging in any type of whistle blowing activity which might have prompted a retaliatory discharge. He does not even allege that he was engaged in such activity. Summary judgment will be granted on Count II of his complaint.

    D. <u>Misrepresentation</u>

    In Counts III and IV of his complaint, Herrera alleges that Baugh "wrongfully and falsely accused him of drinking on the job," that the accusations were "either willfully, intentionally and wrongfully made or were negligently made," and that "any negligent action in the form or misrepresentations" should be imputed to BJS. These allegations do not state a cause of action under New Mexico law. As Defendants point out, if these counts are meant to state a claim for "negligent misrepresentation," they fail to do so. *See*, <u>Stotlar v. Hester</u>, 92 N.M. 26, 28, 582 P.2d 403, 405 (Ct. App. 1978). In addition, Herrera's citation to <u>Davis v. Board of County Commissioners</u>, 127 N.M. 785, 987 P.2d 1172 (Ct. App. 1999) is inapposite. Negligent misrepresentation in the <u>Davis</u> context requires that the employer make a representation to a third party, which is not the situation here. In any case, in the context of at-will employment, and under the authority of <u>Panis</u> and <u>Birge</u>, *supra*, neither Baugh nor BJS owed a duty to Herrera to conduct any further investigation of the drinking incident. This result may be harsh and unfair, especially when an employer is in error in its assessment of an employee's alleged misconduct. If the result is unjust, it is because the law is, in such an instance, also unjust. The law imposes no duty on an employer to be right, wise or fair. In an at-will situation, as here, an employer may terminate an employee for any reason, save for an illegal one. <u>Weidler v. Big J Enterprises, Inc.</u>, 124 N.M. 591, 599, 953 P.2d 1089, 1097 (Ct. App. 1997). There is simply no obligation under the law that an employer's actions in this regard be right, fair, or even just.

Finally, if Herrera is attempting to state a cause of action for slander, he has not done so. Summary judgment will be granted as to Counts III and IV.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment [Doc. 29] is granted, and this case will be dismissed with prejudice.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge

12